Stephani L Ayers, Esq. (Washington #31610)
LAW OFFICE OF S.L. AYERS
P.O. Box 1061
Medford, OR 97501
Tel: (813) 382-7865
Fax: (888) 866-4720
Email: stephani@whistleblowerdefenders.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WESTERN WASHINGTON

**MICHAEL J. SALVO,**

    Plaintiff,

vs.                                                    No. 21-430

                                  **COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**

**HORIZON AIR INDUSTRIES, INC.,**
**AND ALASKA AIR GROUP, INC.**

                                  **(JURY DEMAND)**

    Defendants.

_____

## I. INTRODUCTION

1.    This is an action arising under the anti-retaliation provisions of Title VII and the Washington Law Against Discrimination and under the common law by Plaintiff Michael Salvo (hereinafter "Plaintiff" or "Salvo") against his former employers, Horizon Airlines (hereafter "Horizon" or "Defendants") and Alaska Air

Group (hereafter "Alaska Air" or "Defendants"). Defendants employed Plaintiff as a Pilot Sim Instructor from August 2016 until his unlawful termination on March 30, 2018.  This action seeks equitable relief, compensatory damages, punitive damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for retaliation suffered by the Plaintiff in the course of his employment with Defendants.  Plaintiff alleges that Defendants Horizon and Alaska Air engaged in unlawful reprisal for Plaintiff's equal employment opportunity (EEO) and Washington Human Rights Commission (HRC) activity and disclosures in furtherance of Washington public policy when they retaliated against him and terminated him.

2.      Defendants' retaliatory conduct towards Plaintiff was in violation of Title VII, 42 U.S.C. § 2000e, et seq. and the Washington Law Against Discrimination, codified under RCW 49.60 et seq.   Defendants retaliatory conduct was also in violation of the common law of the State of Washington.

## II. JURISDICTION

3.      This action is brought pursuant to Title VII, 42 U.S.C. § 2000e, et seq. the Washington Law Against Discrimination, codified under RCW 49.60 et seq., and Washington State common law.  This Court has federal question jurisdiction under 28 USC § 1331, §1343 (a)(3) and (4), and supplemental jurisdiction over the state claims under 28 USC § 1367.

COMPLAINT

2

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

4.      Plaintiff has exhausted all administrative procedures required by law on all of the claims for relief pleaded herein where exhaustion is required. As to the retaliatory actions against the Plaintiff due to prior protected activity under Title VII and the WLAD, the Plaintiff has followed the relevant regulations. Plaintiff filed a complaint of discrimination under EEO Charge Number 38G-2019-00053 and WSHRC Charge No. 17EZ-0312-18-9.

5.      The United States Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights (hereafter Notice) dated March 21, 2021, entitling Plaintiff to file an action in this Court for his claims. Plaintiff received the Notice on March 23, 2021. This suit is timely filed within 90 days of receipt of this Notice.

6.      The Court also has personal jurisdiction over Defendants since they regularly conduct business in the State of Washington, and therefore have minimum contacts with the State of Washington. Alternatively, the Court has personal jurisdiction over Defendants since the acts giving rise to this suit occurred within the State of Washington.

### III.  VENUE

**COMPLAINT**

3

7.      Venue lies in this U.S. District Court under 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to this cause of action occurred in the Western District of Washington.

## IV. PARTIES

8.      The Plaintiff, Michael Salvo, is an individual and a citizen of the United States and resident of Seattle, in King County, in the State of Washington.

9.      The Defendant, Alaska Air Group, Inc. is a corporation organized and existing under the laws of the State of Washington with headquarters in Seattle, WA.  It is located at 19521 International Boulevard, Seattle, Washington, 98168. Defendant Horizon is an American regional airline also based in SeaTac, Washington, and owned by Alaska Air Group, Inc.   It is also located at 19521 International Boulevard, Seattle, Washington, 98168.  Since 2011, Horizon has operated under a capacity purchase agreement (CPA) business model, whereby it operates and maintains its aircraft while Alaska Air is responsible for scheduling, marketing, and pricing all flights.  Horizon issued the paychecks to Plaintiff, but Alaska Air and Horizon controlled, supervised and directed the Plaintiff's day-to-day employment activities and/or terms and conditions of employment.

10.     Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-

**COMPLAINT**

4

principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## V. BACKGROUND FACTS

11.    Plaintiff is a pilot and Certified Flight Instructor.   He has over thirty years of experience flying, including on the Boeing 747, 727, DHC-8, Q400, A-10, and A-37s.  Plaintiff has maintained his flight instructor certificate since 1978.  He served for nine years as a U.S. military pilot and flight instructor from 1980-1989. Northwest Airlines hired Plaintiff in 1984 and made him a Captain in 1999.   As a result of his long career, he has considerable knowledge and experience of domestic and international airline operations.

12.    Horizon operates two regional type aircraft, Bombardier Dash 8 Q400 and the Embraier 175.  At the time of Plaintiff's employment with the Defendants in 2017, the U.S. was facing a shortage of pilots.  Regional carriers like Horizon are often the training grounds and source of recruitment for the major carriers.  The forecast at that time was that more than 42% of active U.S. pilots at the biggest carriers would retire over the next ten years (roughly 22,000 pilots).  The projected

**COMPLAINT**

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

retirements from the major carriers exceeded the active U.S. regional airline pilot

corp (roughly 19,000 pilots).

13.     Pilot shortages have significant implications for an air carrier's profits

and indeed an airline's continuing existence. In 2016 Republic Airways filed for

Chapter 11 bankruptcy protection in part because it had to ground aircraft due to a

lack of pilots. In June 2017, Horizon announced it had to cancel six percent of its

schedule – more than 300 flights -- from August to September 2017 because it did

not have enough pilots to cover its flights.

14.     At the same time, after the 2009 Colgan Air crash that killed 50

people, new rules on pilot training were put in place. New pilots are required to

have 1,500 hours of flight time before they can earn their air transport pilots

license.  This means an additional 1,250 hours pilots must accumulate after getting

their commercial certification.

15.     Defendants are regulated by the Federal Aviation Administration

(FAA). The FAA sets forth regulations that govern the operations of aircraft and

the oversight of pilots in the Federal Aviation Regulations (FARs).  These

regulations set forth specific requirements governing training and pilot and

instructor certifications in 14 CFR part 60 and 61.

**COMPLAINT**

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

16.     Defendants also have published employment policies to implement

federal and state laws. These policies include a Code of Conduct that claims:

> We also strive to create a great work environment where our employees
> feel respected and valued – unlawful harassment and discrimination is
> prohibited. We don't tolerate behavior that creates an unlawful hostile
> work environment, which means we don't make derogatory jokes or
> slurs about our co-workers, use unwelcome gestures, or pass around
> offensive or rude emails, texts, or printed materials based on their status
> in a protected class.

17.     The Code of Conduct imposes obligations on Defendants managers to

prevent and report harassment:

> If you're a manager, a big part of your job is to ensure there is no
> unlawful harassment or discrimination occurring among the people
> who report to you. If you see or hear anything that might be unlawful
> harassment and discrimination, or even just inappropriate workplace
> behavior, you must report the behavior immediately to your leader or
> HR

18.     Plaintiff began employment with Defendants as a Sim Instructor in

August 2016.  In early March 2017, before Plaintiff's protected disclosures,

Training Director Jeff Sparks praised Plaintiff for his performance noting he was

"right on".  Plaintiff received a raise based upon his performance at the end of

March 2017.

19.     As part of his employment, Plaintiff used Defendants' Flight Training

Management System, the central repository of each pilots' training maintained by

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

Defendants in part to prove regulatory compliance with FAA requirements for pilot training.  Plaintiff was required to make entries for each simulator session that he administered.  Plaintiff was required to check off each task the student pilot performed and record whether the pilot was proficient or not.

20.     When Plaintiff began his training, Defendants assigned David McGraw to train him in the simulator.  McGraw was the most senior Q400 instructor at Horizon. McGraw was Plaintiff's simulator instructor for at least eight periods and was Plaintiff's seat support acting as his First Officer or co-pilot during Plaintiff's check ride.  During this training, McGraw was abusive and condescending, would frequently not follow Defendants' training policies, and would make discriminatory and inappropriate sexual, racial, and national origin remarks.

21.     On January 9, 2017, a student named Daniel Borg joined Defendants as a Pilot First Officer and commenced training.   Borg was a career firefighter for 26 years and had extensive flight experience prior to joining Defendants.  Borg was also assigned McGraw in the simulator.  While McGraw was training Borg, McGraw again made derogatory slurs and unwelcome gestures based on race, national origin, and/or sex in front of Borg and his co-workers.

COMPLAINT

8

22.     Specifically while training Borg in February 2017, flight instructor McGraw stated "You better watch your ass in Seattle because there's nothing but raghead truck drivers and Ethiopian rampers."  McGraw also made a sexual gesture to imply masturbation when discussing a work place procedure in front of Borg.

23.     Borg reported this to Horizon's then chief pilot Ali Donway in writing via memorandum dated March 14, 2017, in which Borg detailed the instructor McGraw's prohibited employment comments and conduct including his race and national origin based derogatory slurs and sexual gestures.  Borg hand-delivered the complaint letter to Donway and then had a meeting with her to report his concerns.

24.     Rather than move to make timely redress of Borg's concerns or adhere to the Code of Conduct, Donway told Borg that "she didn't have time for this." Donway also stated that Borg's experience with the instructor in question was not unique and "that's just Mac". To Plaintiff's knowledge, Borg's concerns were not investigated, and Defendants failed to stop the derogatory slurs and inappropriate conduct.

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

25.     Borg's protected activity became known through management, including when it was discussed in a pilot instructor meeting that Borg had made a complaint about an instructor.

26.     While Plaintiff Salvo was overseeing Borg as a student, McGraw called Plaintiff Salvo and instructed Salvo to document Borg's "training events". Because this was an unusual call for a prior instructor to make, Plaintiff understood McGraw to be instructing Plaintiff to make a case against Borg so that Borg could not become a pilot in retaliation for Borg's opposition of McGraw's statements.

27.     Plaintiff then learned from fellow instructor Dave Bayro that Borg had made a complaint against McGraw for his comments.  Bayro suggested to Plaintiff that Plaintiff make it difficult for Borg, that he adversely document Borg's training, and that Plaintiff should not send him for his check ride "LOE" because Borg had filed a complaint against McGraw.

28.     Additionally, after Borg's March 2017 report, Borg's name was brought up at an instructor meeting.  Various attendees made it clear in the meeting that Borg had filed a complaint about McGraw and that the instructors should not help him get through training.   The lead instructor said nothing to contravene this instruction.  Later, a fellow instructor told Salvo that the instructor had confronted another instructor as to why that instructor passed Borg on his check-ride.

**COMPLAINT**

10

# VI. PROTECTED ACTIVITES

29.     In approximately November 2016, Plaintiff reported McGraw's discriminatory conduct and statements to Defendants' Director of Training Mark Goldstein and Training Manager Jeff Sparks.  Rather than seek to investigate and remediate, Sparks told Plaintiff "there is nothing you can do to change that".

30.     Throughout March to June 2017, Plaintiff Salvo opposed the unlawful scheme to retaliate against Borg.  After Salvo was instructed to not assist Borg and to document events against Borg to try to force Borg to fail and in reaction to Borg's objecting to and/or opposing discriminatory comments, Plaintiff had Borg for Borg's last LOFT training before Borg's LOE check ride.

31.     Plaintiff refused to participate in misstating Borg's simulator and training performance and conduct. Plaintiff based his assessment of Borg based on Borg's actual performance.

32.     Plaintiff also declined to falsify Borg's assessment in mid-2017. Instead, he reported Borg had all the proficient grades to allow him to take the check ride and advised Defendants of the same.  Several other instructors chastised Plaintiff for this oppositional activity.   When Plaintiff was questioned as to why he had recommended Borg for his checkride, Plaintiff stated Borg had objectively met all the criteria and deserved to pass.

**COMPLAINT**

11

33.     In June 30, 2017, Sparks wrote to Plaintiff about one particular candidate and told Plaintiff to "make" a particular candidate successful.  Sparks stated "we want him to be here."  Because Plaintiff had not received such an abnormal request on behalf of any other candidate in his time there, and because the candidate was African-American, Plaintiff was concerned that Sparks was encouraging Salvo to falsify training records to advantage an African-American candidate. Plaintiff refused to withhold any truthful negative comments or negative assessments on the basis of race that were fairly earned by the candidate.

34.     While working in the Horizon Training Department, Plaintiff observed worsening data issues and report falsification in 2017 to 2018.  For instance, Plaintiff attempted to enter data in the training records of a number of students.  Plaintiff noted that students had been marked as proficient in a maneuver (such as upset recovery), and yet the students confirmed to him that they had never performed the maneuver.

35.     Sometimes the data Plaintiff entered was negative and would require the student receive further training before proceeding on in the curriculum. Plaintiff was chastised by management for doing this. He observed training records were changed by one of the clerks after the fact.  He also observed that training events would be deleted and students were rescheduled with another instructor who

COMPLAINT

12

would give them good marks and send them on to the next event or check ride. Plaintiff complained about instructions from management to not enter negative data about students that could slow down their progression through training. Plaintiff refused to follow their instructions and leave data out of the individual's training records.

36.     On December 10, 2017, Plaintiff objected to Horizon Training Scheduling Pilot Jennifer Portis and FTMS Manager Caysie Duax about the unlawful operation of the Flight Training Management System (FTMS).  He noted that for a particular student that day, the score had been already filled in and had been done under Plaintiff's name.  Plaintiff reported that this was not legal, and he would not participate in signing off on scores he did not report or observe.

37.     Shortly after Plaintiff's email, Director of Training Tristan Anderson called Plaintiff to discuss the illegality of FTMS.  Plaintiff repeated his concern about Defendants' illegal FTMS system and said Defendants were deleting Plaintiff's data and trying to get Plaintiff to sign off on maneuvers Plaintiff did not do with the student.

38.     In January 2018, Plaintiff had to complete a sub-standard pilot progress report.  Such report is not a common occurrence for Plaintiff, but he

**COMPLAINT**

13

observed a student pilot to have been so out of compliance with training requirements that he was concerned the problem was systemic.

39.     Based on Plaintiff's observations, the training lapses were getting worse in 2017.  Chief Instructor Steve Bossom contacted Plaintiff on January 10, 2018 in response to Plaintiff's report and told Plaintiff that it looked like the student had never been held accountable up to that point, which was alarming because prior instructors should have caught and documented the deficiencies.

40.     After Plaintiff's objections to Portis and Duax, on approximately February 2018, Supervisor Jeff Sparks told Plaintiff not to enter remarks about his simulator sessions in the students' training records.  Sparks told Plaintiff that they would learn it "in the airplane".  Plaintiff objected to this instruction and continued to enter comments so he could fully and accurately record each pilot's training, as required by the FAA.

41.     On March 27, 2018, Plaintiff had just completed a simulator session with two students and entered data for the students that included some critical comments. As soon as Plaintiff entered the data, Portis contacted Plaintiff and told him she deleted his data.

42.     Plaintiff objected to Portis deleting his data and then informed Portis that he intended to contact the FAA regarding the data integrity and training issues

**COMPLAINT**

14

LAW OFFICE OF S.L. AYERS
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

he had previously identified.  He then filed an Aviation Safety Report complaint with the FAA regarding Defendants' failure to follow the FAA approved training program.  He referenced the upset recovery maneuver in his filing and shortly thereafter Bossom sent out an email to the employees regarding upset recovery.

43.     On March 28, 2018, Plaintiff notified Training Manager Diana Higbee (who was previously under, and then replaced, Jeff Sparks) that he intended to meet with the Equal Employment Opportunity Commission concerning the work environment at Horizon.

44.     On March 30, 2018, Plaintiff contacted Check Airman John Dittemore, who reported to Jeff Sparks, to schedule a time to raise concerns about Defendants' training failures.

45.     On February 12, 2019, the FAA Flight Standards Service notified Plaintiff that they completed its investigation of his air carrier safety allegations and substantiated that a violation of an order, regulation or standard of the FAA related to air carrier safety occurred.  Almost a year later, on January 2, 2020, the FAA sent a second letter reversing their prior determination.

## VIII. ADVERSE ACTIONS

46.     Defendants subjected Plaintiff to a hostile work environment, where they failed to address or remediate the inappropriate comments from McGraw, harassed him for not complying with their scheme against Borg, instructed him to

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

fail to record information in his training records, or to sign off on entries he did not make or perform, and/or deleted his information from the system.

47.     On March 31, 2018, Plaintiff received a notice of termination of his employment for pretextual reasons of "performance" and "employee engagement".

## IX. CAUSES OF ACTION

## A. FEDERAL CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII

48.     Plaintiff realleges the above paragraphs.

49.     The above acts are separate and continuing violations of Title VII of the1964 Civil Rights Act, as amended, 42 U.S.C §2000e et seq.

50.     In retaliating against and terminating Plaintiff for opposing and complaining about national origin, race, and/or sex discrimination, the Defendant violated Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C §2000e et seq.

51.     Plaintiff (a) engaged in a protected activity by opposing what he reasonably believed to be discrimination based on sex, national origin and/or race, which is an unlawful employment practice under Title VII; (b) suffered the hostile work environment and the adverse employment decision of termination, as set forth above, and (c) because a substantial contributing factor to this treatment and

COMPLAINT

16

termination was consideration of plaintiff's protected activity, there exists a causal

link between his protected activity and the adverse actions.

52. Defendant's termination of Plaintiff caused his actual, economic,

noneconomic, compensatory and special damages including but not limited to (a)

damage to his career and his ability to obtain the highest-level employment within

his industry; (b) lost wages, income and benefits; (c) damage to his professional

reputation and interruption of his demonstrated work history; and (d) ongoing

mental and emotional distress, humiliation, embarrassment, loss of self-esteem,

and diminution in his enjoyment of life.

## B. STATE CAUSE OF ACTION: VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION

53. Plaintiff realleges the above paragraphs.

54. The above acts are separate and continuing violations of Washington

Law Against Discrimination.

55. In retaliating against and terminating Plaintiff, Defendant violated the

Washington Law Against Discrimination, as codified in the RCW 49.60.

56. Plaintiff was opposing what he reasonably believed to be retaliation

on the basis of EEO and WSHRC protected activity and (2) a substantial factor in

the decision to terminate was Plaintiff's opposing what he reasonably believed to

be discrimination.

COMPLAINT

17

57.     Defendants' termination of Plaintiff caused his actual, economic, noneconomic, compensatory and special damages including but not limited to (a) damage to his career and his ability to obtain the highest-level employment within his industry; (b) lost wages, income and benefits; (c) damage to his professional reputation and interruption of his demonstrated work history; and (d) ongoing mental and emotional distress, humiliation, embarrassment, loss of self-esteem, and diminution in his enjoyment of life.

## C. STATE CAUSE OF ACTION: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

58.     Plaintiff incorporates all of the foregoing allegations herein.

59.     There is a clear public policy applicable herein; discouraging the conduct in which Plaintiff engaged would jeopardize that public policy; and the public-policy-linked conduct caused  Plaintiff's dismissal.  Plaintiff refused to commit an illegal act; Plaintiff exercised a legal right or privilege; and/or Plaintiff reported employer misconduct.

60.     The State of Washington through its own legislation and through implementation of federal law and regulations, and in its case law has clearly articulated public policies regarding: (a) the protection of human life; (b) encouraging employees to report employer wrongdoing; and (c) protecting employees from retaliation when they report employer wrongdoing.

COMPLAINT

18

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

61.     These public policies are clearly articulated in a number of legislative and judicial sources, including but not limited to the following legislative and judicial sources: *Ellis v. City of Seattle*, 142 Wash.2d 450, 13 P.3d 1065 (2000), stating the protection of human life is a fundamental and clear public policy recognized in multiple legislative and judicial sources; *Gardner v. Loomis Armored Inc.*, 128 Wn. 2d at 936, finding an employer contravened public policy when it terminated an employee who went to the aid of a citizen facing imminent harm or death; the Washington State Whistleblower Act, which prohibits the state from taking action against its whistleblower employees; and Section 519 of the Wendell Ford Aviation Investment and Reform Act for the 21st Century, protecting employees in the airline industry who report violation of order, rule or regulation relating to air carrier safety.

62.     Plaintiff engaged in particular conduct directly related to or necessary to enforce the clear mandate of these clearly articulated public policies. Discouraging the particular conduct engaged in by the Plaintiff would jeopardize the clear mandate of public policies stated above; and other means of promoting the clear mandate of public policies above are inadequate.

63.     The Plaintiff reasonably believed that Defendants' conduct as described above had violated and was continuing to violate laws and regulations

**COMPLAINT**

19

LAW OFFICE OF S.L. AYERS
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

regarding (a) the protection of human life;  (b) legislation encouraging employees to report employer violations of the law to the employer or appropriate state and federal regulatory agencies; and (c) legislation protecting employees who did report employer violations of the law to the employer or state and federal regulatory agencies.

64.     The above referenced adverse actions against the Plaintiff were intended by the Defendants to discourage him from engaging in protected activity, including contact with regulators, to further the referenced public policies. Retaliation against the Plaintiff because of his protected activity was the cause and/or a substantial motivating factor in the Defendants' decision to terminate him from his employment.

65.     Defendants' stated justification for Plaintiff's termination was false and/or pretextual, and the termination of Plaintiff from his employment was wrongful under the common law of the State of Washington.

66.     The Defendants' wrongful termination of the Plaintiff caused him the injury and damages referenced above.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants and for all relief at law or equity to which Plaintiff is entitled, including but not limited to:

**COMPLAINT**

20

**LAW OFFICE OF S.L. AYERS**
P.O. Box 1061, Medford, OR 97501
Tel: (813) 382-7865

A.      Reinstatement to his employment with Defendant, and if reinstatement is not ordered, then front pay for a period of at least five years, including bonuses and benefits;

B.      Upon reinstatement, an injunction to the Defendant to remediate the hostile work environment, harassment and intimidation to which it subjected Plaintiff;

C.      Back pay for all lost wages and benefits, including lost bonuses, and any other compensation, and reimbursement for lost pension, insurance, and all other benefits;

D.      Economic damages for injury to Plaintiff's career, professional reputation and earning capacity, in an amount to be determined at trial;

E.      Non-economic damages for mental and emotional distress, embarrassment and humiliation, in an amount to be determined at trial;

F.      Expungement of written warnings, reprimands, negative performance appraisals and other derogatory information and references which have been placed in the Plaintiff's personnel file;

G.      Posting of a notice to Defendants' employees indicating that the Defendants have been ordered to comply with the anti-retaliation provisions, and to make appropriate restitution to the Plaintiff;

**COMPLAINT**

21

H.      Reasonable costs and attorney's fees, together with all other relief available from law and equity, including the costs of expert witnesses;

I.      An order that Defendants provide a neutral employment reference to include dates of employment, job title, and final wage rate, to all potential employers regarding Plaintiff in the event reinstatement is not ordered; and

J.      Pre-judgment and post-judgment interest as allowed by law.


DATED: March 30, 2021

Respectfully submitted,

Law Office of S.L. Ayers

s/Stephani L. Ayers_____
STEPHANI L. AYERS (WSBA #31610)

Stephani L. Ayers tel: 813.382.7865
Fax: 1.888.866.4720
E-mail: stephani@whistleblowerdefenders.com

Counsel for Plaintiff